PER CURIAM:
Claimant brought this action for breach of an employment contract by respondent while he was an inmate at St. Mary’s Correctional Center. Claimant seeks an award for lost wages, back pay, interest and postage costs incurred in pursuing this claim in the amount of $1,545.80.
A hearing in this claim was conducted by the Court on November 14, 2003, at which time the claimant testified as to the facts and circumstances giving rise to this claim. Claimant Michael Corriveau was transferred from Huttonsville Correctional Center to St. Mary’s Correctional Center on or about May 12,2000. On June 14,2000, claimant signed a “job contract” to work as an inmate law library clerk. According to the contract, claimant was to be paid $40.00 per month. His duties included assisting other inmates with legal research and assisting them with claims in magistrate court. Claimant served in this position under the initial contract for approximately two and one-half months until August 28, 2000, at winch time respondent renewed the contract with claimant under the same terms. Claimant testified that he showed up for work every day and performed his duties during the six month period he worked at the law library. In late November or early December 2000, claimant decided that he wanted to pursue additional education in the field of paralegal studies so he ordered various books and materials outside of correctional facilities through Blackstone School of Law. Claimant testified that he verbally requested permission from his unit manager, Patrick Mirandi, to order and pay for the books and materials himself and to have these sent to him at St. Mary’s Correctional Center. According to claimant, Mr. Mirandi verbally informed him that he could probably do it if he had his family purchase the books and materials and then send the same to him at the correctional facility. Claimant preferred to perform this task himself but it was denied.
After claimant’s verbal request was denied, claimant filed a “G-l" grievance form requesting in writing that he be allowed to order the first part of the paralegal course material by sending partial payment of $25.00. The total cost for the first part of the course was $50.00. In addition, claimant asserted in the G-l grievance that he was also being denied his constitutional right to an education and that he was being discriminated *147 against. Claimant’s unit manager replied to the G-l grievance in writing on December 5, 2000, which stated that claimant was given an alternative plan of action by either having a family member purchase the books and materials or by paying for the full amount of the order which was $50.00. In addition, the unit manager informed claimant in writing that respondent’s Policy Directives 325.00 and 2.21 both require claimant to obtain administrative authorization for such a purchase. According to claimant, the response from his unit manager was confusing and unclear as to the direction given to claimant explaining his course of approved action. Claimant stated that he was especially confused by the portion of the response that stated claimant had an alternative course of action by having a family member purchase the books and materials or by claimant paying the cost in full. Thus, claimant testified that he interpreted the response from the unit manager as an approval to go forward with the alternative plan of having his wife purchase the materials. Claimant testified that he wanted clarification regarding his grievance response so he wrote to the warden at St. Mary’s Correctional Center, William Fox, for permission. The warden denied claimant permission to order the books and materials. However, claimant testified thatpriorto corresponding with the warden he had already asked his wife to order the books and materials and to pay the full amount of $50.00. A few days later the books and materials were mailed to him at St. Mary’s Correctional Center on or about December 12, 2000.
On January 9,2001, claimant testified that he was abruptly terminated from his j ob as the law library clerk for ordering the books and materials. As a result, he was cited for three different violations. He introduced the “violation reports” into evidence at the hearing of this matter. The first violation report dated January 16, 2001, stated that claimant violated respondent’s Disciplinary Rule No. 2.01 for refusing an order of the Warden denying claimant’s request to enter into a contract with Blackstone Law School. The second violation report dated January 16,2001, charged claimant with the violation of Disciplinary Rule No. 2.21 which was the “misuse of correspondence regulations.” Claimant violated this rule by writing a letter to Blackstone Law School acknowledging his receipt of a reduced payment plan card and advising he would send $50.00 to start the paralegal course. The third violation report, also dated January 16, 2001, charged claimant with violation of disciplinary rule No. 2.29 which is “the unauthorized entiy into a contract” with Blackstone Law School. At this time, claimant also received a “job termination slip” from his j ob supervisor which stated that due to his violations, claimant could not effectively represent other inmates when he had just exhibited the same or similar conduct as inmates he represents. Claimant was found guilty on all three charges in Magistrate Court at St. Mary’s Correctional Center. As a result of this determination, claimant was transferred to Huttonsville Correctional Center.
Once claimant was returned to Huttonsville Correctional Center he filed four grievances and followed the administrative grievance procedures seeking a remedy for the alleged breach of contract by St. Mary’s Correctional Center. Eventually, claimant received permission to apply for a paralegal course which he completed in June 2003.
Claimant now seeks $1,360.00 in lost wages, back pay, and projected raises beginning from the date he was terminated on January 9, 2001, up to the present date. Claimant also seeks $76.80 in interest which he calculated based upon an 8% interest rate per annum since January 9, 2001. In addition, claimant seeks $25.00 for postage expenses incurred in filing this claim. Finally, claimant seeks an award of $84.00 in lost wages as a result of allegedly missing fourteen hours of work at his current place of employment due to respondent’s counsel having to reschedule the original hearing of this claim.
*148 Claimant contends that he was wrongfully terminated from his job while an inmate at respondent’s facility and seeks damages for lost wages, back pay, interest, and postage expenses.
It is respondent’s position that claimant violated numerous operational procedures at St. Mary’s Correctional Center, and as a proximate result of these violations, he was terminated from his job in accordance with respondent’s policies and procedures. Regardless, respondent asserts that claimant was an “at will” employee subject to termination at anytime.
George Warren Janice served as the magistrate for St. Mary’s Correctional Center at the time of tins incident and he heard claimant’s disciplinary case and ruled upon it. Mr. Janice testified that he found claimant guilty on all three charges brought against him by respondent. He made a recommendation that claimant be transferred to Huttonsville, and that he be assessed thirty days loss of privileges on each charge, and that all charges were to run concurrently. Mr. Janice testified that the reason he ordered this punishment was claimant’s total disregard for the rules at respondent’s facility. He testified that claimant had been advised that he did not have administration authorization to contract with a company outside the facility which violated Policy Directives 325 and 2.21. According to Mr. Janice, respondent has a clearly defined policy that requires the warden or deputy warden to inform the inmate in writing whether or not they may purchase material from a source outside ofthe correctional facility. Mr. Janice stated that the first response from Warden Fox to claimant dated December 7,2000, clearly denied claimant the authorization to enter into the contract with Blaclcstone Law School. Further, he stated that the response recommends that he pursue his education through respondent’s education department. Mr. Janice also testified that the reason for respondent’s policy of not allowing inmates to contract with outside organizations is that over the years many inmates have bought items and then not paid for the items which creates legal problems for the respondent. Mr. Janice also stated that the reason he decided to order claimant back to Huttonsville was that claimant showed a total disregard and lack of respect for the system at St. Mary’s Correctional Center, and that St. Mary’s was a new facility at the time. He also stated that St. Mary’s did not have any area designated for the purpose of segregating inmates to punish an inmate. Thus, his only recourse was to send an inmate to another facility as punishment.
Respondent’s Operational Procedure #3.10-1, which was submitted into evidence at the hearing of this matter, states that “it is the policy of St. Mary’s Correctional Center to provide for a mechanism which ensures that all eligible offenders have a meaningful job and/or program opportunities. It is the policy of St. Mary’s Correctional Center that except for serious job related disciplinary infractions, rule violations will not interrupt program or work participation.” Further, Operational Procedure #3.10-1 also states, in part, that work and program assignments will not be affected by disciplinary infractions unless “(T)he infraction arose of or is directly related to the work or program assignment” and “the severity of the infraction warrants segregation.” Further, Operational Procedure #3.10-1 also states that “any offender found guilty of a disciplinary violation and confined to segregation as a result thereof will automatically have his or her job terminated.” If the supervisor terminates an inmates contract, the reasons for the termination must be given to the offender in writing, subj ect to the review ofthe Work Assignment Committee. Further, any contract terminad on may be appealed by the inmate through the Offender Grievance Procedure.
The issue in this claim is whether or not the respondent breached the j ob contract it made with claimant. The Court is of the opinion that based upon the evidence *149 respondent did not breach the job contract it had with claimant. The contract at issue is clearly a terminable “at will” contract, which means that respondent could terminate claimant’s employment at anytime without giving any reason. Regardless, even if the employment contract was not an “at will” contract, the Court is of the opinion that respondent followed its Operational Procedure #3.10-1 pertaining to the inmate work program in terminating claimant from his job contract. The evidence established that claimant failed to obtain proper authorization from the warden or deputy warden to purchase materials from a source outside of the facility, and yet, he deliberately set about making the purchase. Claimant was subsequently found guilty of three violations relating to this purchase in magistrate court. Further, the evidence established that this infraction arose from and was related to the claimant’s work program assignment. Claimant’s “offender j ob termination slip” stated in part that he could not effectively represent other inmates who had disciplinary issues similar to his own. In accordance with Operational Procedure #3.10-1, respondent may take proper disciplinary actions even though it affected claimant’s work assignment. Respondent followed all the proper procedures in terminating claimant including providing him with a termination slip with the reasons for the termination which was reviewed by the work assignment committee, and it timely responded to claimant’s grievances. Finally, respondent is under no constitutional obligation to provide inmates with employment whatsoever nor is respondent obligated to pay inmates a salary for work performed in a prison facility. Further, claimant is not entitled to a recovery for lost wages, back pay, interest, postage, and costs associated with having the initial bearing rescheduled.
Accordingly, the Court is of the opinion to and does deny this claim.
Claim disallowed.